**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 05-398-1** |
| | **:** | |
| | **:** | |
| **EDWARD ROSS** | **:** | |

<u>**MEMORANDUM AND ORDER**</u>

Gene E.K. Pratter, J.                                                April 4, 2006

On March 14, 2006, the Government filed a ten-count Superseding Indictment against

Edward Ross charging him with distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1)

(Counts One through Four); possession with intent to distribute 500 grams or more of cocaine, in

violation of 21 U.S.C. § 841(a)(1) (Count Five); carrying a firearm during a drug trafficking

crime, in violation of 18 U.S.C. § 924(c)(1) (Count Six); possession of a firearm in furtherance

of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Seven); possession of a

machine gun, in violation of 18 U.S.C. § 922(o) (Count Eight); and, felon in possession of a

firearm, in violation of 922(g)(1) (Counts Nine and Ten).

Mr. Ross has filed several motions, including (1) a Motion to Suppress Statements and

Physical Evidence and Request for a <u>Franks</u> Hearing, and (2) a Motion to Compel the Disclosure

of the Confidential Informant's Identity and to Compel Discovery Pertaining to Informant

Information.  Resolution of each motion involves consideration of the value of a confidential

informant's information.  Therefore, the Court addresses both motions in this Memorandum.

First, the Court concludes that the testimony of the Government witnesses at the March 21, 2006 hearing was credible and the information supplied by those witnesses for purposes of preparing the probable cause affidavit was properly included in the affidavit for probable cause and, therefore, the ensuing search warrant was supported by probable cause and evidence seized as a result of the search is admissible.  Second, the Court has determined that analytically the confidential informant's information contained in the affidavit for probable cause was unnecessary for the purpose of meeting the constitutional requirement of establishing probable cause to support the issuance of the search warrant in this particular case.  Third, the Court finds that inquiries made to Mr. Ross on April 23, 2004 by law enforcement personnel were either in furtherance of police safety or followed properly presented "Miranda" warnings.  Because the searches of Mr. Ross and his car were incident to a lawful arrest, any evidence seized as a result is also admissible.  Finally, due to the minimal role of the confidential informant in this case, compelling discovery concerning the confidential informant is not necessary as long as the Government continues to refrain from involving the confidential informant in any aspect of the trial.

## I.     FACTUAL BACKGROUND

In December 2003, Police Detective John Newell began investigating Edward Ross for suspected drug trafficking activities.  Transcript of March 21, 2006 Hearing (herein "Tr.") at 18. As a result of this investigation, Detective Newell conducted several undercover purchases of controlled substances from Mr. Ross.

### A.     The Controlled Purchases of Cocaine

2

On March 25, 2004, Detective Newell met Mr. Ross at 21st Street and Providence Road and  made a controlled purchase of a substance which field tested as cocaine.  Tr. 18.  Then, on April 1, 2004, at approximately 3:40 p.m., Detective Newell met Mr. Ross at the Sunoco station at 22nd and Edgemont Streets, in Chester, Pennsylvania and again purchased a substance which tested positive for cocaine.  Tr. 19.  At 3:30 p.m. on the same day, Detectives Boudwin and Sponaugle observed Mr. Ross leave from the rear of the residential property at 2115 Madison Street and get into a green Chevrolet Monte Carlo parked in the rear of the residence.  Tr. 73-76.

On April 15, 2004 Detective Newell called Mr. Ross to arrange for another purchase of cocaine at the Sunoco at 22nd and Edgemont Streets.  Tr. 20.  Mr. Ross arrived at the station in a green Monte Carlo.  Detective Newell walked to the car, got in and bought from Mr. Ross a half of an ounce of cocaine.  Tr. 20.  Detective Newell states in his Affidavit of Probable Cause for Search Warrant ("Affidavit") that before he made the call to Mr. Ross on April 15, surveillance officers placed 2115 Madison Street under surveillance and that after surveillance officers learned that Detective Newell had called Mr. Ross, Detective Sponaugle observed Mr. Ross exit the rear door of 2115 Madison Street and enter a green Chevrolet Monte Carlo.  These actions were reported to Detective Newell prior to his meeting with Mr. Ross on April 15.  Tr. 25-26.

On April 22, 2004, Detective Newell again contacted Mr. Ross to arrange for another purchase of cocaine.  Tr. 20.  Detective Newell and Mr. Ross again agreed to meet at the Sunoco station at 22nd and Edgemont Streets, and Mr. Ross arrived at the station in a silver Pontiac Bonneville.  Tr. 20.  Detective Newell got in the car and purchased a substance which again field tested positive for cocaine.  Tr. 21.  Detective Newell states in the Affidavit that before he made the call to Mr. Ross on April 22nd, surveillance officers placed 2115 Madison Street under

surveillance and that after surveillance officers learned that he had called Mr. Ross, Detective

Sponaugle observed Mr. Ross leave by way of the rear door of 2115 Madison Street and enter a

silver Pontiac Grand Prix.[1]  These actions were also reported to Detective Newell prior to Mr.

Ross's meeting with Detective Newell on April 22.  Tr. 25-26.

**B.      The Arrest of Edward Ross and the Search of the Silver Pontiac**

On April 23, 2004, Detective Newell arranged for another purchase of cocaine from Mr.

Ross.  Tr. 26.  At approximately 5:45 p.m., Mr. Ross called Detective Newell to inquire about

when he would arrive.  Tr. 26.  Sergeant Boudwin then observed Mr. Ross leave the rear door of

2115 Madison Street and walked toward the silver Pontiac.  Tr. 78.  Sergeant Boudwin and

Detective Sponaugle approached the Defendant while he was in the car and directed him to step

out of it.  Mr. Ross was arrested, put in handcuffs and placed in the back of the officers' van.  Tr.

78-79.  But before Mr. Ross got out of the car, he pushed something underneath his legs which

Sergeant Boudwin found to be four bags of cocaine.  Tr. 79.  Sergeant Boudwin also discovered

a revolver under the driver's seat.  Tr. 79.  Mr. Ross was then asked if anyone else was in the

house, a question to which he answered no.  At that point, he was advised of his Miranda rights,

and after waiving those rights, he told the officers that he lived at 2115 Madison Street and that

nobody was home as he lived alone.  Tr. 80-84.

**C.      The Search of 2115 Madison Street**

---

[1]      The Court notes that in the Affidavit Detective Newell identified the car as a silver Pontiac
Grand Prix, but during his testimony at the March 21, 2006 hearing, Detective Newell referred to
the car as a silver Pontiac Bonneville.  Based on the similarity of these two models, the Court
does not find this discrepancy damaging to the credibility of either the testimony or the
Affidavit.

4

The Government then executed the search warrant request to search the residence at 2115 Madison Street.  The officers knocked on the door of the Defendant's residence, announced their identity and purpose by stating, "Police Officer, search warrant", on two occasions and waited between 20 to 25 seconds.  They then entered the residence with the Defendant's key.  Tr. 86-87. During the search of 2115 Madison Street, the police found assorted drug paraphernalia, two weapons and approximately 670 grams of cocaine.  Tr. 49-50; Inventory of Seized Property dated April 23, 2004.

**D.    Alleged Police Misconduct**

Mr. Ross alleges that during the week of December 8, 2003, Chester, Pennsylvania police took Mr. Ross's vehicle without legal authority.  Mr. Ross also alleges he was harassed by Detective Newell and other police and narcotics officers on July 29, 2004 when Detective Newell, along with Sergeant Boudwin and Detective Sponaugle, pulled Mr. Ross out of his car at gunpoint, handcuffed and arrested him without reciting any Miranda warnings after they observed a drug sale between Mr. Ross and a woman in a WAWA parking lot.  The officers then allegedly placed Mr. Ross in an SUV and took Mr. Ross to his mother's house at 2210 Providence Road which they allegedly entered without a search warrant, then asked for money and proceeded to search 2210 Providence Road.  Mr. Ross contends that defense witnesses have also confirmed that on July 29, 2004, the same police officers went back to 2115 Madison Street and conducted a warrantless search there.

**E.    The Confidential Informant**

Detective Newell states in the Affidavit that during April 2004 he was contacted by a confidential informant who advised that Mr. Ross (known to the informant as "E") was dealing

cocaine in Chester, Pennsylvania.  According to the Affidavit, the confidential informant alleged

that Mr. Ross kept cocaine at 2115 Madison Street and sold cocaine from that location.

## II.    DISCUSSION

### A.    Defendant's Motion to Suppress Statements and Physical Evidence and Request for a <u>Franks</u> Hearing

#### 1.    The <u>Franks</u> Hearing Request

Pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978), if an allegedly false

statement is included in a search warrant affidavit and is necessary to the finding of probable

cause, the Fourth Amendment requires that a hearing into the <u>bona</u> <u>fides</u> of the affidavit must be

held upon a substantial preliminary showing of the appropriateness for such an inquiry.  If the

allegations are established at an ensuing hearing "by a preponderance of the evidence, and, with

the affidavit's false material set to one side, the affidavit's remaining content is insufficient to

establish probable cause, the search warrant must be voided and the fruits of the search excluded

to the same extent as if probable cause was lacking on the face of the affidavit."  <u>Id.</u> at 156.  The

"substantial preliminary showing" must support the conclusion that a material false statement in

the affidavit was made either knowingly and intentionally, or with reckless disregard for the

truth.  <u>Id.</u> at 155.

> A substantial preliminary showing is required in order 'to prevent the misuse of a veracity hearing for purposes of discovery or obstruction.'  A defendant must allege perjury or reckless disregard for the truth and provide accompanying offers of proof; i.e., he should provide a statement of supporting reasons as well as affidavits or otherwise reliable statements of witnesses.  The defendant should point to the specific portions of the affidavit claimed to be false.  'To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.'

United States v. Harrison, 400 F. Supp. 2d 780, 785 (E.D. Pa. 2005) (quoting Franks, 438 U.S. at 170-71).

Mr. Ross argues that it is impossible to see the rear door of 2115 Madison Street except from the vantage point of the backyard of the property or in the rear alley directly behind the property.  Therefore, Mr. Ross contends that any statements in the Affidavit alleging that surveillance officers observed Mr. Ross leaving 2115 Madison Street via the back door necessarily means that the individuals making those observations were located either in the highly visible alley directly behind the residence or in the backyard area of the property.  None of the officers who claim to have observed Mr. Ross depart from 2115 Madison Street from the rear door claim to have done so while located in the rear alley or backyard area.  Therefore, Mr. Ross argues that Detective Newell showed reckless disregard for the truth by including these statements (allegedly) attributable to the surveillance officers in the Affidavit because Detective Newell was familiar with the area in and around 2115 Madison Street and in light of Detective Newell's familiarity with the location, he should have known that in order for surveillance officers to observe Mr. Ross leaving 2115 Madison Street, they would have had to have been positioned in the highly visible locations of the rear alley behind the residence or in the backyard area of the property.

Mr. Ross does not explicitly say so, but his arguments suggest either that Detective Newell (or others) made up their observations or inexplicably but substantially, incorrectly delineated their locations while making those observations.  In either case, Mr. Ross contends that the Affidavit is erroneous.  Indeed, if Detective Newell knew that the surveillance officers could not see Mr. Ross leave the house, but still included in the affidavit that they could see Mr.

Ross leave, then there would be a misrepresentation that could affect whether or not there was probable cause to search the house.  The argument would continue that if Mr. Ross was never in fact seen entering or leaving the house, there would be no connection between Mr. Ross and the residence at 2115 Madison Street.

To test the questions of whether Detective Newell included erroneous information about the surveillance of Mr. Ross leaving 2115 Madison Street and did so either knowingly and intentionally, or with reckless disregard for the truth, the Court permitted Mr. Ross to call his own witness to testify to different vantage points surrounding 2115 Madison Street and to thoroughly cross examine the Government's witnesses concerning whether the back door of 2115 Madison Street could actually be observed.  Mr. Ross also offered exhibits germane to the issue.  In essence, therefore, the process amounted to granting the request for the Franks hearing on the specific question of the efficacy of the Affidavit's premise that the surveillance officers could see Mr. Ross departing the back door of his residence at 2115 Madison Street.  See United States v. Lewis, 139 Fed. Appx. 455, 457 (3d Cir. Mar. 24, 2005) (district court did not explicitly rule on a motion for a Franks hearing but held an extensive evidentiary hearing which the Third Circuit Court of Appeals found served the purpose of a Franks hearing).

At the March 21, 2006 hearing, Mr. Ross failed to show "by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful." United States v. Brown, 3 F.3d 673, 676 (3d Cir. 1993) (quoting Franks, 438 U.S. at 155-56.  To be sure, the parties' respective witnesses came to different conclusions concerning whether the law enforcement personnel could actually see the exit of the residence in question from the vantage point on Madison Street to determine whether Mr. Ross did in fact leave via

8

the back door of 2115 Madison Street. However, the differences in the testimony do not lead the Court to the conclusion urged by Mr. Ross, namely that the material statements in the Affidavit were either recklessly or intentionally untruthful. The Court finds the testimony of the Government witnesses credible that Mr. Ross was in fact seen by law enforcement officers going out of 2115 Madison Street on the occasions alleged in the Affidavit.

Mr. Ross also argues for a <u>Franks</u> hearing because although Detective Newell's confidential informant alleged that he or she was inside of 2115 Madison Street on at least one occasion, and that Mr. Ross possessed and sold cocaine at his 2115 Madison Street residence, Mr. Ross contends that the confidential informant was never present inside 2115 Madison Street. Therefore, Mr. Ross disputes the entire part of the Affidavit which sets forth information obtained from the confidential informant. Mr. Ross argues that the confidential informant lacks credibility and any statements attributable to him or her that were adopted by Detective Newell should be excluded from the Affidavit. The Government responds by arguing that even if Mr. Ross could prove that the confidential informant was never in the Defendant's house, he would have proved only that the confidential informant supplied false information to the police. The Government also claims that a review of the Affidavit, excluding the informant's information, demonstrates that the Affidavit still presents sufficient probable cause to permit a search the Defendant's home.

"It is well-established that a substantial showing of the informant's untruthfulness is not sufficient to warrant a <u>Franks</u> hearing" and "a substantial preliminary showing of intentional or reckless falsity on the part of the affiant must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity." <u>United States v. Brown</u>, 3 F.3d 673, 677 (3d

Cir. 1993).  Before addressing whether the information from the informant was known to be false and included intentionally or recklessly in the Affidavit, the Court will first determine if the confidential informant's information in the Affidavit is even necessary for a finding of probable cause.

A reviewing court may not conduct a <u>de novo</u> review of the magistrate judge's determination of probable cause.  <u>United States v. Conley</u>, 4 F.3d 1200, 1205 (3d Cir. 1993).  A district court may exercise only a deferential review of the initial probable cause determination made by the magistrate.  <u>See</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983) ("A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'") (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969)).  A reviewing court must determine only that the magistrate judge had a "substantial basis" for concluding that probable cause existed to uphold the warrant.  <u>Gates</u>, 462 U.S. at 238.  In determining whether there was a "substantial basis," this Court's role is not to make its own assessment as to whether probable cause existed, but to "determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made."  <u>United States v. Jones</u>, 994 F.2d 1051, 1057 (3d Cir. 1993); <u>United States v. Whitner</u>, 219 F.3d 289, 296 (3d Cir. 2000).  The test to be applied in determining whether probable cause exists for the issuance of a search warrant is that of "totality of the circumstances."  <u>Gates</u>, 462 U.S. at 238.  A probable cause finding does not require that it be "more likely than not" that evidence will be found in the place described.  <u>See, e.g.</u>, <u>Texas v. Brown</u>, 460 U.S. 730, 742 (1983) (probable cause "does not demand any showing that such a belief be more correct or more likely true than false").  Rather, probable cause simply requires a "fair probability" that evidence will be found.  <u>Gates</u>, 462 U.S. at 238.

The Third Circuit Court of Appeals has held that "the fact that probable cause to arrest has been established increases the probability that the defendant is storing evidence of that crime in the defendant's residence." United States v. Whitner, 219 F.3d 289, 297 (3d Cir. 2000). "[I]f there is probable cause to believe that someone committed a crime, the likelihood that the person's residence contains evidence of the crime increases." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993)[2]. In Whitner the court embraced common sense practicality by observing that "[i]n the case of drug dealers, a number of other courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside." United States v. Whitner, 219 F.3d 289, 297 (3d Cir. 2000) (citing United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999) (It reasonably could be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there.) cert. denied, 528 U.S. 1119 (2000); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999) ("[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . and . . . in the case of drug dealers evidence is likely to be found where the dealers live.") (quoting United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir. 1996) (internal quotations and citations omitted); United States v. Henson, 123 F.3d 1226, 1239 (9th Cir. 1997) ("In the case of drug dealers, evidence is likely to be found where the dealers live.") (internal quotation omitted); United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1993) (observations of drug trafficking occurring away from dealer's residence along with officer's statement in affidavit that drug dealers often store evidence in their residences provided probable cause for

---

[2]   See infra pp. 14-15 concerning the Court's conclusion that there was probable cause to arrest Mr. Ross.

search of dealer's house); United States v. Thomas, 989 F.2d 1252, 1255 (D.C. Cir. 1993) (per curiam) (observations of drug trafficking occurring away from dealer's residence can provide probable cause for search of dealer's house); United States v. Williams, 974 F.2d 480, 482 (4th Cir. 1992) (per curiam) (affidavit establishing that known drug dealer was residing in a motel room established sufficient probable cause to search motel room for drug paraphernalia); United States v. Davidson, 936 F.2d 856, 859-60 (6th Cir. 1991) (evidence of pattern of defendant's involvement in drug-dealing established probable cause to search defendant's residence although there was no direct evidence of drug dealing occurring at the residence); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); United States v. Cruz, 785 F.2d 399, 406 (2d Cir. 1986) (probable cause established for search of drug dealer's apartment although defendant was not seen using the apartment)).

Mr. Ross attempts to distinguish the facts surrounding the search of 2115 Madison Street from Whitner by identifying that in addition to being arrested as a result of a controlled delivery of 5.75 pounds of methamphetamine and the admission that he was in some way associated with a known drug dealer, the defendant in Whitner "was deceptive in his answers when the agents asked him about the location of his residence." Whitner, 219 F.3d at 298. This distinction is not persuasive.

Here, Mr. Ross apparently made repeated in person sales of cocaine to the undercover officer, and surveillance officers established that in making these sales, the Defendant came directly from the residence to be searched. The last one of these sales in which Mr. Ross departed from 2115 Madison Street occurred the day before the district justice reviewed the

application for a search warrant.  Therefore, the alleged misrepresentations concerning the confidential informant's statements in the Affidavit do not require a <u>Franks</u> hearing because even if Mr. Ross's allegations about the confidential informant's information were accurate and, as a result, that information is removed from the probable cause determination, there was still enough information in the Affidavit to establish probable cause for the search warrant in this case. Accordingly, further analysis of the informant's veracity is irrelevant for the purposes of determining whether a <u>Franks</u> hearing is required.

Finally, Mr. Ross argues that a <u>Franks</u> hearing should be held because the officers involved in his arrest and search the of 2115 Madison Street were some of the same officers responsible for allegedly harassing Mr. Ross on separate prior occasions, causing Detective Newell's affidavit to lack credibility.  Analytically, alleged police harassment (even if it occurred as alleged) does not amount to a substantial showing that any claims in the Affidavit were false because the damage done by the supposed prior police harassment to the credibility of the information in the Affidavit is merely Mr. Ross's conclusory claim, and "the challenger's attack must be more than conclusory."  <u>Franks</u>, 438 U.S. at 170-71.  Therefore, a <u>Franks</u> hearing is not necessary or appropriate on these grounds.

Mr. Ross has ultimately failed to meet his burden to show "by a preponderance of the evidence, and, with the affidavit's false material set to one side, [that] the affidavit's remaining content is insufficient to establish probable cause . . . ."  <u>Franks</u> at 156.  Therefore, the Court will now consider the parties' arguments concerning the suppression of evidence and statements in light of the fact that the Court has determined that the validity of search warrant, even in absence

of any information from the confidential informant, has survived Mr. Ross's challenge under

Franks.

> ### 2.    Suppression of Evidence

> #### a.    The Arrest and Search of the Silver Pontiac

Mr. Ross argues that there was no "particularized and objective basis" for suspecting

either that Mr. Ross was involved in a crime at the time the police stopped him, or that he was

armed and dangerous, and, therefore, any evidence seized from his car should be suppressed.

The Government correctly asserts that this argument by the defense ignores the facts and

circumstances surrounding the arrest.  Rather than responding to Mr. Ross's claim that there was

no reasonable suspicion for the authorities to stop him, the Government appropriately claims the

"stop" of the Defendant was amply supported by probable cause to arrest him for the cocaine

sales.

Under the Fourth Amendment, the people are "to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue,

but upon probable cause . . . ."  U.S. Const. amend. IV.  Accordingly, any evidence obtained

from an unreasonable search and seizure is deemed "fruit of a poisonous tree" and must be

excluded.  Wong Sun v. United States, 371 U.S. 471 (1963).  However, "[l]aw enforcement

authorities do not need a warrant to arrest an individual in a public place as long as they have

probable cause to believe that person has committed a felony."  United States v. McGlory, 968

F.2d 309, 342 (3d Cir. 1992).  Probable cause exists whenever circumstances within a police

officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an

offense has been committed by the person being arrested.  Beck v. Ohio, 379 U.S. 89, 91 (1964).

Probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts. Illinois v. Gates, 462 U.S. 213, 232 (1983). The standard "requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Here, according to the Government's presentation there was a four-month investigation of the Defendant, the numerous hand-to-hand cocaine sales to the undercover officer, the conversations that the Defendant had with Detective Newell to arrange these sales in April 2004, and the Defendant's departures from 2115 Madison Street to sell cocaine to the undercover detective. These facts establish probable cause to believe that Mr. Ross had committed drug trafficking offenses.

Therefore, because the arrest of the Defendant at his vehicle was justified, the subsequent seizures of the cocaine from the driver's seat of the silver Pontiac and of the gun from under that seat were permissible because the search of the car was valid as a search incident to a lawful arrest. There is no dispute that the passenger compartment of a car may be searched incident to a lawful arrest of an occupant of that car. New York v. Belton, 453 U.S. 454, 460 (1981). In addition, Mr. Ross's vehicle was seized for purposes of possible forfeiture because it was used in the drug transactions. Thus, the weapon found in the car at the time of the arrest would have been discovered inevitably because a search of the vehicle would have been conducted pursuant to standard police procedure upon its impounding. Tr. 84-85. The Government established the inevitable discovery of the evidence inside the vehicle by showing that the evidence would ultimately have been recovered by the police pursuant to routine police procedures. United

States v. De Reyes, 149 F.3d 192, 195 (3d Cir. 1998). "It is well established that law enforcement officers may make a warrantless inventory search of a legitimately seized vehicle." United States v. Bush, 647 F.2d 357, 370 (3d Cir. 1981).

Moreover, here there was probable cause under the totality of the circumstances to search the Ross vehicle without a search warrant under the automobile exception to the warrant requirement. Maryland v. Dyson, 527 U.S. 465 (1999); Pennsylvania v. Labron, 518 U.S. 938 (1996); United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002). Therefore, the search of the Pontiac was consistent with the requirements of the Fourth Amendment, and the evidence seized as a result of that search will not be suppressed.

**b.      The Four Corners of the Search Warrant**[3]

Mr. Ross asserts that the warrant should not have been issued because the Affidavit filed in support of the warrant "lacked the requisite probable cause to justify the search." Def. Motion at p. 10 para. 11. The Defendant, however, does not pursue this argument in his memorandum of law. Based on the Court's previous conclusion that there was probable cause to search the residence even if the confidential informant's information is removed from the Affidavit for probable cause, it is unnecessary to further address this portion of the Defendant's motion to

---

[3]     Mr. Ross also argues that the evidence seized from 2115 Madison Street must also be suppressed because of a failure by the Government to abide by the "knock and announce rule." It is well settled that the execution of a search warrant for an individual's home may be unreasonable where law enforcement agents fail to properly knock and announce their presence and purpose before they forcibly enter the residence. See Wilson v. Arkansas, 514 U.S. 927, 931 (1995). However, during the March 21, 2006 hearing, Sergeant Boudwin credibly testified that he knocked, announced his presence and waited 20 to 25 seconds prior to entering the residence at 2115 Madison Street using Mr. Ross's keys. Tr. 86. Mr. Ross offered no contrary evidence. Therefore, the knock and announce rule has been satisfied in this case.

suppress, and the Government will be permitted to offer evidence seized from 2115 Madison Street at trial.

### 3.    Suppression of Statements- Privilege Against Self Incrimination

Mr. Ross also argues that any statements he made at the time of his arrest should be excluded from trial.   He maintains that the officers' statements to him after he was in custody were of an accusatory nature, and, therefore, because Mr. Ross was subjected to a custodial interrogation, Mr. Ross was "entitled to the benefit of the procedural safeguards enunciated in Miranda." Berkemer v. McCarty, 468 U.S. 420, 434 (1984).  Rather than challenging the assertion that Mr. Ross was subject to a custodial interrogation, the Government asserts that Mr. Ross was advised of his Miranda rights by Sergeant Boudwin, that he understood his rights and the consequences of waiving these rights, and that he relinquished his rights voluntarily.

The Supreme Court has recognized that in-custody interrogations place "inherently compelling pressures" on the persons interrogated.  Miranda v. Arizona, 384 U.S. 436, 467 (1966).  To protect the Fifth Amendment privilege against self-incrimination, the Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444.

To establish a valid waiver of an individual's rights under Miranda, the Government must show by a preponderance of the evidence that (1) the defendant relinquished these rights voluntarily and (2) that the defendant was aware of his rights and understood the consequences of waiving these rights.  See Moran v. Burbine, 475 U.S. 412, 421 (1986); United States v. Sriyuth, 98 F.3d 739, 748-49 (3d Cir. 1996).  This determination must be made with

17

consideration of the "totality of the circumstances." United States v. Velasquez, 885 F.2d 1076, 1080-82 (3d Cir. 1989).

At the hearing held March 21, 2006, testimony from Government witnesses established that Mr. Ross was indeed read his rights under Miranda, and that Mr. Ross then waived those rights. However, Government witness Sergeant Boudwin also established that he did ask Mr. Ross "Is anyone else in the house?" before reading Mr. Ross his Miranda rights. Defense counsel argued at the hearing that the answer to this question, as well as any questioning after the Miranda warnings were given, ought to be excluded under Rhode Island v. Innis, 446 U.S. 291 (1980), and Missouri v. Seibert, 542 U.S. 600 (2004). Tr. 139.

As an initial matter, the Court finds that Mr. Ross was in fact in custody and was directly asked whether anyone else was inside the residence prior to any Miranda warnings. Therefore, if the Court were to stop here, under Innis, the answer by Mr. Ross might well be subject to exclusion. Innis, at 301-02 ("[T]the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.). However, in New York v. Quarles, 467 U.S. 649 (1984), the Supreme Court held that answers given to questions asked prior to reading a suspect his Miranda warnings will not be excluded if the purpose of the officer's question was "to secure their own safety or the safety of the public" and not "designed solely to elicit testimonial evidence from a suspect." Id. at 659. "In such situations, a defendant must show actual coercion by an officer to have the information obtained during questioning suppressed or excluded." United States v. King, 366 F. Supp. 2d 265, 275 (E.D. Pa. 2005) (citing Quarles, at 658).

18

Mr. Ross argues that the "public safety exception" does not apply here because the instant matter did not involve "an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." New York v. Quarles, 467 U.S. 649, 659 n.8 (1984).   Another court in this district has recently applied the public safety exception to pre-Miranda questions not involving weapons but instead regarding particular potential safety threats connected with clandestine methamphetamine laboratories such as booby traps, toxic fumes, chemicals and explosions. See United States v. King, 366 F. Supp. 2d 265, 269, 274-75 (E.D. Pa. 2005).[4]

The facts in this case demonstrate that the question of whether other people were in the Madison Street house was asked out of concern for the safety of the officers.   When Sergeant Boudwin asked Mr. Ross this question, he had already found a revolver in Mr. Ross's car.   Tr. 110.   Furthermore, at the hearing on March 21, 2006, Sergeant Boudwin stated: "That was my

---

[4]   Additionally, several state courts around the country have applied the public safety exception to situations where law enforcement officials have asked an individual who has not yet been read his Miranda rights if there are other people in a particular place that could pose a danger to the police. See Commonwealth v. Clark, 730 N.E.2d 872, 884-85 (Mass. 2000) (public safety exception applied where officer asked suspect if he was alone after a gun battle but prior to giving Miranda warning); Joppy v. State, 719 So.2d 316, 319 (Fla.Ct. App. 1998) (public safety exception applied where officer asked burglary suspect if anyone else was inside dark building prior to giving Miranda warning); People v. Askew, 220 A.D.2d 811 (N.Y. App. Div. 1995) (the court refused to suppress burglary suspect's statement, "I am in here myself" because the officer's query was prompted by the officer's concern for his own and his fellow officers' safety); Dice v. State, 825 P.2d 379 (Wyo. 1992) (the public safety exception applied when after a officer placed the defendant under arrest and without having read him his rights, asked him if there was anyone else in the building from which he was apprehended); Hill v. State, 598 A.2d 784, 786-87 (Md. 1991) (public safety exception applied where police officer asked armed robbery suspect the location of another suspect prior to giving Miranda warning); State v. McKessor, 785 P.2d 1332, 1337 (Kan.1990), cert. denied, 495 U.S. 937 (1990) (public safety exception applied where officer asked robbery suspect the location of his companion and the location of a gun prior to giving Miranda warning). But see State v. Hazley, 428 N.W.2d 406, 411 (Minn. Ct. App. 1988) (public safety exception not applied where police officer asked robbery suspect who was with him prior to giving Miranda warning).

first question, just to make sure that we weren't in a cross-fire situation.  I just wanted to know if anybody else was in the house, and he said, no, there was nobody else home."  Tr. 82. Therefore, the Court concludes that the question was asked in order to eliminate the reasonable concern that there could be others inside the residence that may pose a threat to officers who were about to conduct a search of the residence, rather than to solicit incriminating information from Mr. Ross.  Moreover, there is no indication that Mr. Ross's pre-Miranda statement was coerced.

Finally, Mr. Ross's statements after the Miranda warning followed a knowing and voluntary waiver.  Sergeant Boudwin testified that following his initial question, he read Mr. Ross his rights from a "Miranda rights" card issued to law enforcement officers by the Delaware County District Attorney's Office.  Tr. 80-82.  Upon the reading to Mr. Ross his rights, Mr. Ross indicated that he understood his rights and was willing to answer questions.  Tr. 83-84.  Then, in response to Sergeant Boudwin's questions, Mr. Ross again stated that no one else was in the residence, that he lived there by himself and then he showed Sergeant Boudwin the key on a key ring which opened the lock on the door to 2115 Madison Street.  Tr. 84.

However, as defense counsel quite properly suggested at the hearing, this type of questioning can result in suppression of the forthcoming statements.  The Supreme Court considered a two-step interrogation process in Missouri v. Seibert, 542 U.S. 600 (2004), where, in step one, officers questioned a suspect without giving Miranda warnings and obtained a confession, and in step two, they obtained a second confession in a "Mirandized" interrogation. Id. at 604-05.  The Third Circuit Court of Appeals applies the Seibert plurality opinion as narrowed by Justice Kennedy. United States v. Long Tong Kiam, 432 F.3d 524, 532 (3d Cir.

2006).  Justice Kennedy determined that statements obtained during the second interrogation are inadmissible if "the two step interrogation was used in a calculated way to undermine the Miranda warning."  Id. at 622 (Kennedy, J., concurring in the judgment).  But, when the first statement is admissible, as it is here, the Seibert analysis does not apply.  See United States v. Long Tong Kiam, 432 F.3d at 531-33 (When the court found that an initial statement did not require a Miranda warning in order to be admissible, the court then explained the application of Seibert only to "clarify the proper analysis to follow had the District Court been correct, and the first statement actually been improperly unwarned.").

At the hearing, Sergeant Boudwin testified that he asked Mr. Ross about whether anyone else was in the house due to officer safety concerns, and no evidence contradicts this testimony. Further, he stated that he did in fact administer Miranda warnings after the initial question concerning whether anyone else was inside the premises.  Thus, under Quarles there was no Miranda violation concerning Mr. Ross's first statement that the residence was unoccupied, and, therefore, Seibert does not apply here because the first statement is, in fact, admissible.

**B.     Defendant's Motion to Compel the Disclosure of the Confidential Informant's Identity and Motion to Compel Discovery Pertaining to Informant Information**

According to the Affidavit supporting the issuance of the search warrant for the search conducted on April 23, 2004, by members of the Delaware County CID Narcotics Unit ("Narcotics Unit") at 2115 Madison Street, Detective Newell allegedly met with a confidential informant who told Detective Newell that Mr. Ross (known to the informant as "E") was dealing cocaine.  Reportedly, the confidential informant knew this because he or she had purchased cocaine from Mr. Ross on numerous occasions in the past.  The Affidavit alleges that the

21

confidential informant stated that Mr. Ross kept the cocaine he sold to his customers on the first

floor at the 2115 Madison Street property.  The confidential informant claimed that he or she had

been inside 2115 Madison Street and had observed Mr. Ross in possession of what he or she

believed to be cocaine.

> **1.**     **The <u>Roviaro</u> Test**

Mr. Ross argues that based on Detective Newell's Affidavit, the confidential informant is

not merely a tipster who supplied information that served as a basis for a search warrant but

rather is a material eyewitness to "crucial occurrences" for which Mr. Ross is now indicted.

Moreover, Mr. Ross claims that other individuals had access to 2115 Madison Street and the

confidential informant may have dealt with them because Mr. Ross denies that he was ever

present in 2115 Madison Street with the confidential informant and denies ever selling drugs to

the confidential informant.  Therefore, Mr. Ross argues that the identity of the informant and

information the Government may have about the informant is essential to his defense.

The Government responds by arguing the confidential informant had only a minor role as

a confidential informant because Mr. Ross will not be tried for any sales to the confidential

informant or for any sales which a confidential informant supposedly witnessed.  Likewise, the

Government states that the confidential informant was not an eyewitness to the execution of the

warrant or the recovery of the evidence which forms the basis of the charges in this case.

Finally, the Government asserts the confidential informant will not be a Government witness at

this trial.  Therefore, the Government argues against disclosure of the informant's identity.

The government privilege against disclosing the identity of an informer is based on

public interest in effective law enforcement.  Clearly, however, that interest must be balanced by

the requirement of fundamental fairness.  See Roviaro v. United States, 353 U.S. 53, 59-61

(1957). "Where the disclosure of an informer's identity, or of the contents of his communication,

is relevant and helpful to the defense of an accused, or is essential to a fair determination of a

cause, the privilege must give way."  Id. at 60-61.  See also McCray v. Illinois, 386 U.S. 300,

310.  (1967).  "Whether a proper balance renders nondisclosure erroneous must depend on the

particular circumstances of each case, taking into consideration the crime charged, the possible

defenses, the possible significance of the informer's testimony, and other relevant factors."

Roviaro, 353 U.S. 53, 62.  Furthermore, in United States v. Jiles, 658 F.2d 194 (3rd Cir. 1981),

the Court of Appeals interpreted Roviaro and McCray to require the identity of a confidential

informant be disclosed when "(1) the possible testimony was highly relevant; (2) it might have

disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; [or] (4)

the informer was the sole participant other than the accused, in the transaction charged."  Id. at

198 (citing McCray, 386 U.S. at 310-11; Roviaro, 353 U.S. at 63-65).

It is the defendant, however, who bears the burden of setting forth a specific need for

disclosure.  United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981).  "The mere speculation that

an eyewitness may have some evidence helpful to the defense's case is not sufficient to show the

specific need required by Roviaro."  United States v. Jiles, 658 F.2d at 197.  "Once the defendant

sets forth a specific need for disclosure the court should then undertake the balancing test."

United States v. Robles, 814 F. Supp. 1233, 1240 (E.D. Pa. 1993) (citing United States v. Jiles,

658 F.2d 194, 197 (3d Cir. 1981).

"The defendant must indicate some concrete circumstances that might justify overcoming

both the public interest in encouraging the flow of information [from informants to law

enforcement] and the informant's private interest in his [or her] own safety." <u>United States v. Robles</u>, 814 F. Supp. 1233, 1240 (E.D. Pa. 1993) (quoting <u>United States v. Estrella</u>, 567 F.2d 1151, 1153 (1st Cir.1977)).  Absent an affirmative showing that disclosure is necessary to the defense, the court will not compel the government to disclose an informant's identity. <u>See, e.g.</u>, <u>United States v. Allen</u>, 566 F.2d 1193, 1194 (3d Cir. 1977) ("We conclude that the lower court did not err in finding that the informant's testimony was not necessary to the defense."). Furthermore, the Third Circuit Court of Appeals has held that <u>Roviaro</u> "left substantial leeway to the trial courts to determine on a case-by-case basis whether disclosure is warranted." <u>United States v. Brown</u>, 3 F.3d 673, 679 (3d Cir. 1993).

Mr. Ross contends that the facts in <u>Roviaro</u> are similar to the facts in his case.  In <u>Roviaro</u>, officers conducted surveillance while the defendant met with and allegedly distributed heroin to a confidential informant.  At trial, the defense sought production of the identity of the informant, which the court denied.  After the appellate court affirmed the conviction, the Supreme Court reversed, holding that it was reversible error under the circumstances to refuse to compel the government to disclose the informant's identity.  A principal factor which led the Supreme Court to its conclusion, which Mr. Ross erroneously contends is also present in this case, is the fact that the <u>Roviaro</u> informant was the "one material witness" since as far as the defendant knew, the informant and the defendant "were alone and unobserved during the crucial occurrence for which he was indicted." 353 U.S. at 64.  The Government contends that here, unlike in <u>Roviaro</u>, Mr. Ross will not be tried for any sales to the confidential informant or for any sales which a confidential informant witnessed and, therefore, even if Mr. Ross could substantiate his claim that he did not sell cocaine to the confidential informant, it would be

irrelevant and immaterial.  Furthermore, the Government points out that the confidential informant was neither an eyewitness to the sales to the undercover officer, nor to the execution of the search warrant, nor to the recovery of the evidence which forms the basis of the charges in this case.

However, Mr. Ross also relies on United States v. Fuentes, 988 F.Supp. 861 (E.D. Pa. 1997).  In United States v. Fuentes, 988 F.Supp. 861 (E.D. Pa. 1997), the defendants were accused of the illegal sale of narcotics in a case in which the prosecution's principal witness would testify at trial that he had brokered the sale of cocaine from the defendants to an undercover D.E.A. agent.  The witness was an undercover narcotics informant.  The government intended to present the informant's testimony as well as tape recordings of conversations between the informant and the defendants to establish the conspiracy.  However, the government refused to provide the informant's identity, and the defense moved to compel disclosure.  After hearings on the matter, the court granted the defendants' motion and ordered the government to disclose the confidential informant's identity, but the government elected not to disclose the identity of the witness and filed a motion to reconsider and vacate the order.  Id. at 862.  The court denied the request to vacate the order and excluded the testimony citing confrontation principles discussed in Smith v. Illinois, 390 U.S. 129, 131 (1968) ("To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross- examination itself.").

The Fuentes court further held that the government's refusal to disclose the identity of the witness deprived the defendants of any possibility to meaningfully investigate the informant's background and left the defense with no way of testing the veracity or completeness

25

of the government's limited disclosures.  "This complete reliance on the prosecution is, in our view, inimical to our adversary process and to the checks on government prosecution embedded in our constitutional framework."  <u>Fuentes</u> at 865.

Here, the Government responds by arguing that it will not call the confidential informant as a trial witness, stating "[t]hus, the portions of the defendant's memorandum of law that rely on <u>United States v. Fuentes</u>, 988 F.Supp. 861 (E.D. Pa. 1997) and <u>Smith v. Illinois</u>, 390 U.S. 129 (1968), in both of which the government was seeking to have an informant testify without revealing the person's 'true' identity, are inapposite."  Gov't Response at 11.

Mr. Ross has failed to meet his burden of showing that the informant can provide concrete material evidence that aids his defense.  Even if the Defendant could substantiate his claim that he did not sell cocaine to the confidential informant, it would be pointless here.  Since the Government will not be alleging at trial that the Defendant sold to the confidential informant, or in the informant's presence, the informant's role is not at issue.  Additionally, as already addressed, the informant's information was not even necessary for the finding of probable cause to search Mr. Ross's residence.  Thus, disclosure is not warranted because Mr. Ross has not met his burden to establish a specific need for the confidential informant's identity.  Furthermore, because the information the informant provided was confirmed in detail by police officers who conducted their own independent investigation into Mr. Ross's activities at 2115 Madison Street and who will testify at the trial, the need to maintain the confidentiality of the informant would substantially outweigh the defendant's need for the informant's identity in order to have a fair trial.

2.      In Camera Review to Determine the Role of the Confidential
        Informant

Mr. Ross argues in the alternative the Court should conduct an in camera review of the

Government's information concerning the confidential informant, explaining that in response to

Roviaro, several circuit courts of appeals have determined that where the non-disclosure of a

confidential informant is potentially prejudicial to the defendant, the case should be remanded to

the district court where an in camera hearing can be conducted to assess the relevance of the

informant's testimony to the case.  See e.g., United States v. Cortese, 614 F.2d 914, 921-22 (3d

Cir. 1980).  Mr. Ross cites United States v. Moralez, 908 F.2d 565, 568 (10th Cir. 1990), where

the court remanded the case for an in camera review holding "we are unable to determine the

degree of involvement of the confidential informant."  The Government does not take issue with

this option other than to state that if the Court finds that the defense has made an adequate

showing of need, the Government will submit to the Court in camera information establishing

the security and law enforcement reasons specific to this informant why disclosure would

endanger the informant and be contrary to the public interest in effective law enforcement.

Unlike Moralez, there is no ambiguity here -- the confidential informant had a limited

role and will not be relevant at trial.  Additionally, any information from the confidential

informant is not even necessary for the purposes of establishing probable cause for the search

warrant.  Therefore, an in camera review is not necessary.

III.    CONCLUSION

For the foregoing reasons, Mr. Ross's Motion to Suppress Statements and Physical

Evidence and Request for a Franks Hearing, and Motion to Compel the Disclosure of the

Confidential Informant's Identity and to Compel Discovery Pertaining to Informant Information

are granted only to the extent that the Court has already heard testimony and allowed evidence to

be offered concerning whether the law enforcement personnel could actually see Mr. Ross leave

the residence at 2115 Madison Street.  In all other respects the Motions are denied.  An

appropriate Order consistent with this Memorandum follows.


                                        BY THE COURT:

                                        S/Gene E.K. Pratter
                                        GENE E. K. PRATTER
                                        UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 05-398-1** |
| | **:** | |
| | **:** | |
| **EDWARD ROSS** | **:** | |

## <u>ORDER</u>

AND NOW, this 4th day of April, 2006, after considering the Defendant's (1) Motion to Compel the Disclosure of the Confidential Informant's Identity and to Compel Discovery Pertaining to Informant Information, (Docket No. 26), (2) Motion to Suppress Statements and Physical Evidence and Request for a <u>Franks</u> Hearing, (Docket No. 27), and the Government's responses thereto, (Docket Nos. 39 and 40), the Defendant's Motions are GRANTED only to the extent that the Court has heard testimony and allowed evidence to be offered concerning whether the law enforcement personnel could actually see Mr. Ross leave the residence at 2115 Madison Street.  In all other respects, the Motions are DENIED.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE