IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Action No. 05-0398** |
| v. | : | |
| | : | **Civil Action No. 10-4309** |
| **EDWARD ROSS** | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                       NOVEMBER 1, 2013

Edward Ross, a career criminal who is currently serving a 40-year sentence for ten drug-related and firearms offenses, seeks postconviction relief under 28 U.S.C. § 2255. Although Mr. Ross has persistently pressed for the application of the Supreme Court's decision in *Staples v. United States*, 511 U.S. 600 (1994), to the jury instructions for Counts VII and VIII of his case, for the reasons discussed below, there was no error in not incorporating *Staples* in the instructions for Count VII and the potential error under Count VIII was harmless. Each of Mr. Ross's other claims has been considered extensively, and rejected, previously. Therefore, Mr. Ross's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence ("Motion") (Docket No. 107) must be denied.

**I**

A federal jury convicted Mr. Ross on ten drug-related and firearms offenses. On Counts I through IV of the Superseding Indictment, Mr. Ross was found guilty of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Mr. Ross was found guilty on Count V of possession with intent to distribute cocaine. On Counts VI and VII, the jury found him guilty of possessing and using a firearm and, in particular, a machinegun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The jury also found him guilty on Count

VIII of possession of a machinegun in violation of 18 U.S.C. § 922(o)(1) and, on Counts IX and X, guilty as a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1).

After the verdict, Mr. Ross moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal on Counts V through X or, in the alternative, under Rule 33 for a new trial. The Court, finding the evidence sufficient to warrant a conviction on each of the challenged counts, denied both motions. Docket No. 89, *available at United States v. Ross*, No. 05-cr-398, 2007 WL 2571620 (E.D. Pa. Aug. 31, 2007).[1]

The Court subsequently sentenced Mr. Ross to 40 years' imprisonment followed by eight years' supervised release. Jan. 9, 2008 Sentencing Tr. N.T. 129-30; Jan. 11, 2008 Judgment (Docket No. 96). Because of his prior criminal history—which included two felony drug crimes—Mr. Ross had accumulated 12 criminal history points under United States Sentencing Guidelines Manual §§ 4A1.1 through 4A1.3, not quite enough for the 13 points that would put him into criminal history Category VI, the highest, *see* U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (Sentencing Table). However, because of his two prior drug-related offenses and the nature of his instant crimes, Mr. Ross nonetheless was subject to the provisions of the career offender Guideline, *id.* § 4B1.1,[2] and thus Category VI and its equivalent.[3] Accordingly, for

---

[1] Upon motion of the United States following sentencing, Counts VI and IX were dismissed. Jan. 11, 2008 Judgment (Docket No. 96).

[2] Sentencing Guidelines Manual § 4B1.1(a) provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a).

Count VII, possession of a machinegun in furtherance of a drug trafficking crime, Mr. Ross earned the mandatory 30 years. Jan. 9, 2008 Tr. N.T. at 130:3-5; Jan. 11, 2008 Judgment. For each of Counts I through IV, the drug offenses, Count VIII, possession of a machinegun, and Count X, possession of a firearm by a felon, he earned 10-year sentences to run concurrently with each other. Jan. 9, 2008 Tr. N.T. at 129-30; Jan. 11, 2008 Judgment. But, in accordance with 18 U.S.C. § 924(c)(1)(D)(ii), the 30-year sentence for Count VII will run consecutively with the aforementioned 10-year sentences. Jan. 9, 2008 Tr. N.T. at 130:3-5; Jan. 11, 2008 Judgment.[4]

The Third Circuit Court of Appeals affirmed Mr. Ross's conviction and sentence. *United States v. Ross*, 323 F. App'x 117, 120 (3d Cir. 2009).

## II

In his Motion, Mr. Ross sets forth five grounds for challenging his sentence: (1) ineffective assistance of counsel for counsel's failure to raise insufficiency of the evidence with regard to Count VIII (his conviction under 18 U.S.C. § 922(o) for possession of a machinegun);

---

[3] Category VI status, in addition to being triggered by a defendant's prior accumulation of 13 or more criminal history points, also attaches by automatic operation of subsection 4B1.1(b), but only to offenses falling under that subsection—and offenses under 18 U.S.C. § 924(c) fall instead under subsection 4B1.1(c). *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(b) ("*Except as provided in subsection (c)*, . . . the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case *under this subsection* shall be Category VI." (emphases added)); *id.* § 4B1.1(c) ("If the defendant is convicted of 18 U.S.C. § 924(c) . . . , and the defendant is determined to be a career offender under subsection (a) . . . ."). But as the example in the commentary indicates, Category VI will still attach on the basis of a qualifying non–§ 924(c) offense. *See id.* § 4B1.1 cmt. 3(E). Further, the reason that Category VI itself does not attach in the case of § 924(c) offenses is because "subsection (c)(3) provides a sentence at or near the statutory maximum for these offenders by using guideline ranges that correspond to criminal history *category VI* and offense level 37," *id.* § 4B1.1 cmt. background, and so, in effect "subsection (b) exempts cases that arise under subsection (c) because the provisions of subsection (c) make assigning a defendant a criminal history category superfluous," *United States v. Marseille*, 377 F.3d 1249, 1257 n.12 (11th Cir. 2004).

[4] *See also infra* note 11.

3

(2) ineffective assistance of counsel for counsel's failure to raise insufficiency of the evidence with regard to Count V (his conviction under 21 U.S.C. § 841(a)(1) and (b)(1)(B) for possession of 500 or more grams of cocaine with intent to distribute); (3) ineffective assistance of counsel for counsel's failure to raise insufficiency of the evidence with regard Counts VI, VII, and VIII for Mr. Ross's constructive possession of the machinegun; (4) a *Brady* violation for the United States' intentional suppression and withholding of exculpatory evidence; and (5) prosecutorial misconduct for intentionally deceiving and misleading the jury with knowingly fabricated evidence. In his Motion, Mr. Ross conceded that he had already raised his second, fourth, and fifth grounds (of course, directly, and not as incorporated into ineffective assistance of counsel claims) in his Rule 29 and 33 motions and that the Court had ruled upon these motions in its August 31, 2007 Memorandum. *See also Ross*, 2007 WL 2571620.

\*   \*   \*

Mr. Ross's first and third grounds present slightly more complicated questions. Mr. Ross argues first the ineffectiveness of his trial and appellate counsel for failure to raise the insufficiency of the evidence for his conviction for possession of a machinegun under 18 U.S.C. § 922(o)(1). In particular, Mr. Ross creditably argued in his September 18, 2013 supplemental briefing that the rule and rationale from *United States v. Staples*, 511 U.S. 600, applies to § 922(o)(1)—namely, that the Government must prove not only that the defendant possessed a machinegun, but that he knew of the characteristics of the firearm that brought it within the statutory definition of a machinegun. Mr. Ross argues that the relevant jury instructions were in error because, while they required the jury to find that the firearm in question was a machinegun and that he knowingly possessed the firearm, they did not include an additional instruction that the jury must also find that Mr. Ross knew of the characteristics of the firearm that made it a

4

machinegun—i.e., that he knew the gun was a machinegun. Mr. Ross's third ground is the same as his first, but with respect to 18 U.S.C. § 924(c)(1)(B)(ii), for possession of a machinegun in furtherance of a drug trafficking crime.

Following a request for further briefing, the United States responded to Mr. Ross's *Staples* specific-intent argument with a supplemental memorandum of its own. The Government conceded that § 922(o)(1) requires the prosecution to prove to the jury that the defendant knew of the relevant characteristics of the firearm, and thus requires such a jury instruction, but contested that any such specific *mens rea* requirement should be implied under § 924(c).

### III

Mr. Ross's second, fourth, and fifth grounds in the instant Motion were issues he raised, albeit directly rather than through ineffective assistance of counsel claims, in his Rule 29 and 33 motions. Upon careful review, the Court finds that these grounds are indeed duplicative and concludes, therefore, that Mr. Ross can obtain no relief upon them. *See Ross*, 2007 WL 2571620, at *4 (sufficiency of the evidence for conviction on Count V for possession of 500 or more grams of cocaine); *id.* at *14-16 (*Brady* violations); *id.* at *16-19 (misconduct). To the extent that Mr. Ross added contentions in his Reply (Docket No. 114)—for instance, with regard to the fifth ground, for prosecutorial misconduct, that "[t]he prosecutor also made inappropriate statements" in closing argument, Rep. at 35—these contentions are meritless attempts to rehash his earlier arguments. As the Government argues, "it is certainly permissible for any party to encourage a jury to credit a particular person's testimony based on that person's occupation and experience." Gov't's Supp. Resp. at 14 (Docket No. 120). Finally, to the extent that Mr. Ross's first and third grounds depend on his challenge to the jury's finding that he constructively possessed the firearms in question, those claims are unavailing for the reasons stated in the

5

Court's prior opinion. *See id.* at *3-4. And, of course, if the claims are meritless, then there can be no harm resulting from counsel's failure to raise them. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984).[5]

Thus, only two questions remain (along with any derivative questions they may raise). First: Was Mr. Ross's counsel ineffective under *Strickland* and its progeny for failing to contest the § 922(o)(1) (Count VIII) jury instructions as lacking the particular directive that the jury must find that Mr. Ross knew of the characteristics of his firearm that made it a machinegun? Second: Was Mr. Ross's counsel ineffective for failing to raise the same issue with respect to § 924(c)(1)(B)(ii)? For the reasons that follow, the answer to both questions is no. Answering those questions depends, first, on understanding the nature of Congress's machinegun prohibitions; second, on the *mens rea* requirements for each statute; and, finally, whether any error was prejudicial under *Strickland*.

---

[5] The *Strickland* Court explained:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.
>
> The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial.

*Strickland*, 466 U.S. at 697.

## A

Section 5845 of the Internal Revenue Code provides the operative definitions of "firearm" and "machinegun" for 18 U.S.C. §§ 922(o) and 924(c):

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

I.R.C. § 5845(b). Section 922(o) defines a crime of simple possession: "it shall be unlawful for any person to transfer or possess a machinegun," 18 U.S.C. § 922(o)(1), outside of limited governmental exceptions and a grandfather clause, *see id.* § 922(o)(2), neither of which, of course, applies here. Section 924(c)(1)(B)(ii), as discussed in greater detail below, provides a 30-year mandatory minimum for individuals convicted of using, carrying, or possessing a machinegun in furtherance of a drug trafficking crime. *See* § 924(C)(1)(A), (B)(ii).

\*   \*   \*

In 1994, in the seminal case of *Staples v. United States*, 511 U.S. 600, the Supreme Court addressed the question of whether a different federal statute requiring registration of covered firearms and thus, by reference, machineguns, had a *mens rea* requirement. In the absence of any words in the statute related to an intent or state of mind requirement, the defendant wanted the Court to imply one. Agreeing with the defendant, the Supreme Court rejected the Government's contention that

> Congress intended the Act to regulate and restrict the circulation of dangerous weapons. Consequently, in the Government's view, this case fits in a line of precedent concerning what we have termed "public welfare" or "regulatory" offenses, in which we have understood Congress to impose a form of strict criminal liability through statutes that do not require the defendant to know the

facts that make his conduct illegal. In construing such statutes, we have inferred from silence that Congress did not intend to require proof of *mens rea* to establish an offense.

*Id.* at 606. Instead, the Supreme Court reasoned, the long history of lawful gun possession in the United States militated in favor of implying a *mens rea* requirement into the statute:

[D]espite their potential for harm, guns generally can be owned in perfect innocence. Of course, we might surely classify certain categories of guns—no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in [*United States v. Freed*, 401 U.S. 601 (1971)]. But precisely because guns falling outside those categories traditionally have been widely accepted as lawful possessions, their destructive potential, while perhaps even greater than that of some items we would classify along with narcotics and hand grenades, cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting [the statute in question] as not requiring proof of knowledge of a weapon's characteristics.

*Id.* at 611-12. The *Staples* Court therefore held that because "the Government's construction of the statute potentially would impose criminal sanctions on a class of persons whose mental state—ignorance of the characteristics of weapons in their possession—makes their actions entirely innocent," *id.* at 614-15, "to obtain a conviction, the Government should have been required to prove that petitioner knew of the features of his [machinegun] that brought it within the scope of the Act," *id.* at 619. But, emphasizing the narrowness of its holding, the Court added that "our holding depends critically on our view that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." *Id.* at 620.

### 1

Although the applicability of this rule to § 922(o)(1) was not before the *Staples* Court and the Supreme Court has never reached it, the courts of appeals that have confronted the question

8

of whether § 922(o)(1) likewise contains an implied *mens rea* requirement have all reached the same conclusion—that it does.[6] As the Government here concedes, "The government has recognized, and courts have held, that *Staples* applies to a prosecution under 18 U.S.C. § 922(o)(1) for possession of a machine gun." Gov't's Supp. Resp. at 3. Although the Third Circuit Court of Appeals is not among those appellate courts to have considered the issue, this Court has no serious doubt that it would agree with the so-far uniform interpretation that *Staples* requires the United States to prove that a defendant charged with a violation of § 922(o)(1) knew of the characteristics of his weapon that brought it within the range of § 5845(b).

Here, the jury instructions that the Government proposed and the Court gave directed the jury that it had to find "Number one, that the defendant possessed a firearm as described in Count Eight of the superseding indictment"; "Two, that the firearm that the defendant possessed

---

[6] In *Staples*, the Supreme Court held that under 26 U.S.C. § 5861(d), which criminalizes possession of an unregistered machinegun, the Government must prove not only (1) the defendant's knowing possession of a covered firearm—as "the Government conceded" in *Staples*—*see Staples*, 511 U.S. at 621 (Ginsburg, J., concurring)—but also (2) "that [the defendant] knew of the features of his [firearm] that brought it within the scope of the Act"— i.e., of the features that made it a machinegun, *id.* at 619 (majority opinion).

The Government has previously acknowledged that "the Supreme Court's decision in *Staples* applies with equal force to prosecutions under 18 U.S.C. § 922(o)." *United States v. Rogers*, 94 F.3d 1519, 1523 (11th Cir. 1996). In the past, at least four Justices of the Supreme Court have simultaneously expressed this view, although the issue has never squarely reached the Court. *See Rogers v. United States*, 522 U.S. 252, 254 n.1 (1998) (opinion of Stevens, J., joined by Thomas, Ginsburg & Breyer, JJ., dismissing the writ of certiorari as improvidently granted) ("[P]etitioner was charged with the unlawful possession of a machinegun in violation of 18 U.S.C. § 922(o). His conviction on that count was reversed on appeal after the Government conceded that the evidence did not establish that petitioner knew that the gun had been modified to act as a fully automatic weapon. Reversal was therefore required under *Staples v. United States*, which was decided after the trial in this case." (citations omitted)). And at least six circuit courts of appeals have agreed, although the Third Circuit Court of Appeals has not yet considered the issue. *See United States v. Smith*, 508 F.3d 861, 866 & n.3 (8th Cir. 2007); *United States v. Nieves-Castano*, 480 F.3d 597, 600 (1st Cir. 2007); *United States v. Camp*, 343 F.3d 743, 745-46 (5th Cir. 2003); *United States v. McGiffen*, 267 F.3d 581, 589-90 (7th Cir. 2001); *United States v. Gravenmeir*, 121 F.3d 526, 529-30 (9th Cir. 1997); *Rogers*, 94 F.3d at 1523 (11th Cir.).

was a machine gun. And number three, that the defendant acted knowingly." May 16, 2006 Tr. N.T. at 90:19–91:5. The instructions did not, however, also separately direct the jury that it had to find that Mr. Ross knew of the characteristics of the firearm charged in Count VIII that brought it within § 5845(b).[7] Although it is likely that the instruction "that the defendant acted knowingly" was not enough to meet this specific intent requirement, the Court need not resolve that particular question because "[t]he government . . . does not dispute that the jury was not given an instruction consistent with *Staples*." Gov't's Supp. Resp. at 4 n.2, and what error there may have been was, for the reasons discussed below, harmless.

## 2

Section 924(c)(1)(B)(ii) is another matter, however. As the two courts of appeals to have confronted the issue since the Supreme Court's decision in *United States v. O'Brien*, 130 S. Ct. 2169 (2010), have concluded, 18 U.S.C. § 924(c)(1)(B)(ii) does not fall under *Staples*'s narrow rule. Mr. Ross's argument is that § 924(c), like § 922(o)(1), must contain the same specific intent

---

[7] At the close of Mr. Ross's trial, the jury instructions for Count VIII of the Superseding Indictment provided, in full:

> Section 922(o) of Title 18 of the United States Code provides in part that it shall be unlawful for any person to possess a machine gun. The defendant is charged in Count Eight of the superseding indictment with possession of a machine gun, in violation of Section 922(o) of Title 18. In order for Mr. Ross to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt. Number one, that the defendant possessed a firearm as described in Count Eight of the superseding indictment. Two, that the firearm that the defendant possessed was a machine gun. And number three, *that the defendant acted knowingly*.

May 16, 2006 Tr. N.T. at 90:19–91:5 (emphasis added). No further instruction on the third requirement, that Mr. Ross "acted knowingly," was suggested by the Government, *see* Government's Proposed Jury Instructions (Docket No. 55), and none was provided, *see* May 16, 2006 Tr.

requirement. But despite sharing references to I.R.C. § 5845(b)'s definition of a "machinegun," the two statutes differ dramatically in purpose and context.

Section 924(c)(1)(A) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime

shall be sentenced to certain mandatory minimum terms provided. 18 U.S.C. § 924(c)(1)(A). Subsection (B)(ii) otherwise provides for a greater punishment for a more serious offense: "If the firearm possessed by a person convicted of a violation of this subsection is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years." *Id.* § 924(c)(1)(B)(ii). Unlike § 922(o)(1), which can be violated by simple possession, and which therefore required the Supreme Court to imply a *mens rea* requirement to avoid the "danger of ensnaring an altar boy who made an innocent mistake," *United States v. Burwell*, 690 F.3d 500, 507 (D.C. Cir. 2012) (en banc) (citation, alteration, and internal quotation marks omitted), *cert. denied*, 133 S. Ct. 1459, § 924(c)(1) requires that the possession or use of a firearm further the commission of a drug trafficking crime.

Although the Supreme Court has held that § 924(c)(1)(B)(ii) requires the Government to prove to a jury, as "an element of [the] offense," that the weapon the defendant possessed or used was a machinegun, *O'Brien*, 130 S. Ct. at 2180, the Court has not yet addressed whether "a defendant who uses, carries, or possesses a firearm must be aware of the weapon's characteristics. [The *O'Brien*] opinion expresses no views on the point," *id.* at 2173.

11

But there is little doubt about the correct rule in the courts of appeals. After *O'Brien*, which established that the identity of the firearm as a machinegun was an element that must be proved to the jury as opposed to a sentencing factor that could be determined by the judge, *see id.*, only two courts of appeals have reached the specific intent question at issue here. But they have agreed that § 924(c)(1)(B)(ii) does not contain any such implied specific *mens rea* requirement. *See Burwell*, 690 F.3d at 506-08 (D.C. Cir.); *United States v. Haile*, 685 F.3d 1211, 1218 (11th Cir. 2012) (relying on the pre-*O'Brien* decision in *United States v. Ciszkowski*, 492 F.3d 1264, 1268-69 (11th Cir. 2007)), *cert. denied*, 133 S. Ct. 1723 (2013). As the Court of Appeals for the D.C. Circuit explained in *United States v. Burwell*, no court of appeals has rejected its rule that § 924(c)(1)(B)(ii) does *not* contain a specific *mens rea* requirement. *See* 690 F.3d at 511. Rather, before *O'Brien*, several other circuits, although erroneously (according to *O'Brien*) interpreting § 924(c)(1)(B)(ii) as a sentencing factor rather than as an element of the offense, held that § 924(c)(1)(B)(ii) did not require a specific *mens rea*. *See Ciszkowski*, 492 F.3d at 1268-69 (basing holding on language of the statute and inapplicability of *Staples*); *United States v. Gamboa*, 439 F.3d 796, 812 (8th Cir. 2006) (basing holding on the view that the machinegun provision was a sentencing factor); *United States v. Eads*, 191 F.3d 1206, 1212-14 (10th Cir. 1999) (same).[8]

---

[8] Before *O'Brien*, at least two courts of appeals, including the Court of Appeals for the Third Circuit, assumed without deciding that specific knowledge of the machinegun's characteristics was a required element to be submitted to the jury, but the courts made those assumptions because in both cases the courts "conclude[d] that the jury would have found that the Appellants knew that they possessed a machine gun . . . if the knowledge instruction was given." *United States v. Rodriguez*, 54 F. App'x 739, 747 (3d Cir. 2002); *see also United States v. Dixon*, 273 F.3d 636, 640-41 (5th Cir. 2001) ("It may have been preferable if the judge had instructed the jury that the government must prove beyond a reasonable doubt that the defendant knew that the weapon was a short-barreled shotgun. However . . . [u]nder the facts of this case there can be no doubt that defendant knew that he possessed the weapon in question and that he knew the characteristic of that weapon.").

12

It is quite likely that if § 924(c)(1)(B)(ii) had a *mens rea* requirement, it would have been satisfied here based on the Government's evidence. But it is not necessary—in fact, it is improper—to reach that more difficult evidentiary question, because the logically antecedent question, whether § 924(c)(1)(B)(ii) requires the Government to prove that the defendant knew that his firearm was a machinegun, if properly answered in accord with *Burwell*, disposes of Mr. Ross's argument. In *Burwell*, the Court of Appeals for the D.C. Circuit exhaustively considered the issue and concluded, persuasively and en banc, that no such heightened *mens rea* requirement may be implied into § 924(c)(1)(B)(ii). This Court agrees.

Though the *Burwell* opinion is lengthy, learned, and deliberate, its core reasoning is easily summarized. Explicitly considering the relevance of *Staples* and other Supreme Court decisions addressing the implication of *mens rea* requirements, the *Burwell* Court explained:

> [I]n *Staples v. United States*, [the Supreme Court] implied a *mens rea* requirement in 26 U.S.C. § 5861(d), a provision that made it "unlawful for any person . . . to receive or possess a firearm which is not [federally] registered." 511 U.S. 600, 605 (1994). The Court held the statute *did* require the Government to prove *mens rea* because a contrary ruling would "criminalize a broad range of apparently innocent conduct." *Id.* at 610. In closing, the Court . . . reason[ed] that "if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." *Id.* at 620.

*Burwell*, 690 F.3d 500 at 506. "[T]he presumption in favor of *mens rea*," the *Burwell* Court continued, "was triggered by the need to avoid imposing substantial penalties—including jail sentences—on innocent citizens who had no idea they were committing a crime." *Id.* at 506-07.

But for obvious reasons, "[t]he concerns animating the presumption in favor of *mens rea* in [the Supreme Court's case law, including *Staples*] simply are not present" with respect to § 924(c)(1)(B)(ii). *Id.* at 507. The *Burwell* Court reasoned:

> Section 924(c)(1)(B)(ii) poses no danger of ensnaring an altar boy who made an innocent mistake, because the government must first prove the defendant is guilty of either drug trafficking or a violent crime, and must further prove that the

13

> defendant intentionally used or carried a firearm, or intentionally possessed a firearm, during or in furtherance of that offense. There is thus no risk of unfairness because the defendant "knows from the very outset that his planned course of conduct is wrongful." *United States v. Feola*, 420 U.S. 671, 685 (1975). Even [amicus National Association of Criminal Defense Lawyers'] characterization of [this rule] as imposing "strict liability" is inaccurate, as the government is still required to establish *mens rea* with respect to the predicate crime and with respect to the use, carrying, or possession of the firearm.

*Burwell*, 690 F.3d at 507 (citation, internal quotation marks, and alteration omitted).

To put the matter in still simpler terms: This Court remains unpersuaded that Congress did not intend to impose harsher penalties, even if they resemble strict liability with regard to one element, on drug traffickers whose firearms turn out to be more dangerous than most, or even that Congress had the remotest concern that drug traffickers might not know that their firearms were machineguns. Indeed,

> [n]or is it unusual to punish individuals for the unintended consequences of their *unlawful* acts. Perhaps the most obvious example is the felony-murder rule. In *Dean v. United States*, 556 U.S. 568 (2009), the Supreme Court suggested the machinegun provision and the felony murder rule are analytically congruent. Moreover, courts have concluded similarly structured statutes do not require a showing of *mens rea*. For example, this Court has interpreted 21 U.S.C. § 841, which imposes an additional ten-year penalty for trafficking certain types or quantities of drugs, as not requiring the government to prove the defendant knew how much or what type of drug he was selling. *United States v. Branham*, 515 F.3d 1268, 1276 (D.C. Cir. 2008). Every other circuit to have addressed the question has agreed. *See id.* at 1275 n.3 (collecting cases).

*Burwell*, 690 F.3d at 507-08.

This Court agrees with the Courts of Appeals for the District of Columbia and the Eleventh Circuit and holds, therefore, that § 924(c)(1)(B)(ii) does not require the Government to prove to the jury that the defendant knew the characteristics of the weapon that made it a machinegun. For this reason, Mr. Ross's claim regarding the jury instructions for Count VII fails and it is unnecessary to consider whether his counsel was ineffective under *Strickland* for failing to raise it.

**3**

The only remaining issue, then, is whether the likely erroneous instruction on Count VIII for violation of 18 U.S.C. § 922(o)(1) gives rise to an ineffective assistance of counsel claim. It does not. Assuming, *arguendo*, that the instruction is erroneous and, further, that the jury would not have convicted Mr. Ross had it received an explicit instruction directing it to determine whether Mr. Ross knew not only that he possessed a firearm that was a machinegun,[9] but that he knew the firearm he possessed had the characteristics making it a machinegun under I.R.C. § 5845(b), his conviction and sentence to ten years' imprisonment under Count VIII were, as to him, entirely harmless. Mr. Ross's sentence was harmless because, in sentencing Mr. Ross, the Court stated, "[A]s to each of Counts 8 and 10, the defendant is sentenced to serve 120 months *concurrent with the imposition of the sentences on Counts 1 through 4 and Count 5*." Jan. 9, 2008 Sentencing Tr. N.T. at 130:5-8 (emphasis added). While each of Counts I through IV carry penalties of up to 30 years, *see* 21 U.S.C. § 841(b)(1)(C), Count V required a mandatory minimum of 10 years because Mr. Ross was a prior felony drug offender.[10] Further, Mr. Ross's

---

[9] This conclusion is far from foregone. *See United States v. McCulligan*, 256 F.3d 97, 101 (3d Cir. 2001) ("[N]on-structural constitutional errors, including the failure to submit an element of a crime to the jury, are subject to harmless error review." (citing *Neder v. United States*, 527 U.S. 1, 8-15 (1999)); *United States v. Rodriguez*, 54 F. App'x 739, 747 (3d Cir. 2002) (approving of the Fifth Circuit Court of Appeals' holding in *United States v. Dixon*, 273 F.3d 636, 640-41 (5th Cir. 2001), "that even if the court's jury instruction was inadequate, it did not affect the defendant's substantial rights because there could be no doubt that the defendant knew the characteristics of the weapon in question," *Rodriguez*, 54 F. App'x at 747, and "conclud[ing] that the jury would have found that the Appellants knew that they possessed a machine gun or a gun with a silencer if the knowledge instruction was given," *id.*).

[10] *See* 21 U.S.C. § 841(b)(1)(B)(ii)(II) ("In the case of a violation of subsection (a) of this section involving 500 grams or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers . . . [i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, *such person shall be sentenced to a term of imprisonment which may not be less than 10 years* and not more than life imprisonment . . . ." (emphasis added)).

30 years for violating § 924(c)(1)(B)(ii) must run consecutively with the 10-year sentence for Counts I through V.[11] Thus, even if the Court were to vacate Mr. Ross's Count VIII sentence and conviction under 18 U.S.C. § 922(o)(1), he would not walk free a day sooner.

Second, the conviction itself, if erroneous, was also harmless. In many cases a defendant might be able to argue that an extra conviction would prejudice him in the future by adding criminal history points, for instance, even if this contention would depend on the speculative prospect of his being convicted of a future crime. But Mr. Ross, as a Category VI career criminal, is not in a position where the addition of any criminal history points will make any difference if he ever again finds himself facing federal charges. And in the absence of any identifiable harm, counsel's failure to call a potential foul is not actionable under *Strickland*.

## IV

While Mr. Ross may deserve kudos for his spirited argument that 18 U.S.C. § 922(o)(1) requires the Government to prove that the defendant knows the characteristics of his machinegun that make it, in fact, a machinegun, and the jury instructions on Count VIII may therefore have been erroneous, any such error was entirely harmless. Mr. Ross is serving a 40 year sentence— 10 years concurrently for multiple counts of drug trafficking and 30 years to follow for his possession of a machinegun in furtherance of these drug crimes. Although § 922(o)(1) requires the implication of a *mens rea* element in order to protect the innocent firearms owner who does

---

[11] *See* 18 U.S.C. § 924(c)(1)(D)(ii) ("Notwithstanding any other provision of law no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 5G1.2(e) ("[T]he sentence to be imposed on the 18 U.S.C. § 924(c) . . . count shall be imposed to run consecutively to any other count."); U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(c)(2)(A).

not realize that his weapon is automatic rather than semiautomatic, § 924(c)(1)(B)(ii) undoubtedly does not require such a showing. The justification for implying a *mens rea* requirement where none appears in a statute is to protect the innocent man who, thinking he is engaging in traditionally lawful conduct, would otherwise violate it. That rationale is not applicable to drug traffickers bearing firearms. No heightened *mens rea* requirement is needed "to avoid criminalizing otherwise lawful conduct." *Burwell*, 690 F.3d at 505. The Supreme Court's jurisprudence in this regard comports with common sense. "[R]einforced by *Staples*, [it] instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements *that criminalize otherwise innocent conduct*." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (emphasis added). And despite the rare case in which the drug trafficker is unaware that his firearm is a machinegun, § 924(c)(1)(B)(ii) serves to deter others like him from bringing such guns along to the drug sale—or, in a proverbial analogy, to the knife fight. *See Burwell*, 690 F.3d at 513 ("Congress likely attached such a steep penalty to the use of a machinegun in an attempt to deter *all* offenders from using such weapons.").

While the Third Circuit's case law has not addressed this particular question, the Third Circuit Court of Appeals agrees with the principles that the *Burwell* Court concluded govern its resolution. For example, the Third Circuit Court of Appeals has recently held that to obtain a conviction under 21 U.S.C. § 860 for drug distribution within 1000 feet of a school,

> the government does not have to show that the defendant had knowledge that he was possessing narcotics *within* 1,000 feet of a school. *United States v. Dimas*, 3 F.3d 1015, 1022 (7th Cir. 1993); *United States v. Falu*, 776 F.2d 46, 50 (2d Cir. 1985) ("[Section 860(a)] contains no express *mens rea* requirement for the distance element of the offense."). Second, the *mens rea* element for § 860(a) is found in the required underlying violation of § 841(a)(1), which calls for a *knowing* possession of narcotics *with intent* to distribute. *Falu*, 776 F.2d at 50 ("This construction of [section 860(a)] does not criminalize otherwise innocent activity, since the statute incorporates section 841(a)(1), which already contains a *mens rea* requirement . . . ."). Third, under § 860(a), the government does not

need to prove that the defendant intended to distribute the narcotics within 1,000 feet of a school.

*United States v. Jackson*, 443 F.3d 293, 299 (3d Cir. 2006). And at bottom, § 924(c)(1)(B)(ii) is little different.

Sections 922(o)(1) and 924(c)(1)(B)(ii) have different *mens rea* requirements because they have different purposes and present different concerns. Mr. Ross is not in a position to benefit from § 922(o)(1)'s heightened *mens rea* requirement because even if the § 922(o)(1) jury instructions were in error for failing to specify this heightened requirement, Mr. Ross was not prejudiced. His prior convictions making him a Category VI career criminal,[12] together with the points attributed for the unchallenged counts of conviction that independently establish more than the 13 points required for Category VI status, *see* U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (Sentencing Table), mean that no amount of extra criminal history points for Count VIII will change his future criminal history category prospects should he recidivate.[13] And even were the Court to vacate his conviction on Count VIII, the multiple 10-year sentences that are running concurrently with his sentence on Count VIII mean that he would leave the Bureau of Prison's custody not a day sooner. Without such a showing of prejudice, Mr. Ross cannot proceed on any ineffective assistance of counsel claim under *Strickland*.

\*   \*   \*

---

[12] *See supra* note 3 and accompanying text.

[13] The Court recognizes that a future sentencing court would see on Mr. Ross's prior criminal history the "extra" conviction, but given the pantheon of his Dionysian and Hadean convictions, where his category would be—indeed, could be—no greater, it is entirely too speculative to assume that this one count of conviction would serve as a material "tipping point" in the exercise of sentencing discretion by a hypothetical court following yet another hypothetical conviction in the future almost 40 years hence.

For the foregoing reasons, Mr. Ross's Motion to Vacate, Correct, or Amend a Sentence must be denied. An Order consistent with this Memorandum follows.

BY THE COURT:


 /s/  Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge